UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05-CV-522-H

JOHN COLEMAN, et al.                                                      PLAINTIFFS

V.

FEDEX GROUND PACKAGE SYSTEM,                   DEFENDANT
INC.

**MEMORANDUM OPINION AND ORDER**

After being centralized with dozens of related lawsuits in a Multi-District Litigation ("MDL") proceeding, this case has returned to its original venue to resolve of its outstanding claims. Those claims are that Defendant, FedEx Ground Package System, Inc. ("FedEx Ground" or "FXG"), violated KRS 337.060 by making a variety of improper deductions from their wages. Plaintiffs represent themselves and a class of pick-up and delivery drivers who worked for FedEx Ground in Kentucky. Each party has now filed a motion for summary judgment. For the reasons that follow, the Court grants Defendant's motion for summary judgment as to most of the claims against it. Correspondingly, Plaintiffs' motion for summary judgment is denied in part and granted in part.

I.

FedEx Ground provides nationwide small package pick-up and delivery services. To facilitate this work, Defendant enters into an Operating Agreement ("OA") with pick-up and delivery drivers. The OA governs the entire relationship between the two parties, and explicitly classifies the drivers as independent contractors. It allows the individual choices in specified provisions and enables the drivers to take advantage of entrepreneurial opportunities, such as

holding propriety rights in their routes, hiring assistants or employees, and expanding their businesses to include multiple trucks and routes. The drivers bear many responsibilities under the agreement, including the maintenance of their own equipment, but they are afforded procedural protections should FedEx Ground choose to terminate the relationship.

The OA allows Defendant a significant amount of control over the drivers. The company places limits on the number of routes a driver may own at a given terminal and issues minimum standards for their assistants or employees. FedEx Ground controls assigned work, even regulating the flow of packages through individual trucks.

In 2005, Plaintiffs, four former Kentucky FedEx Ground drivers, filed this class action complaint alleging that Defendant committed fraud and unlawfully withheld wages. The Judicial Panel on Multi-District Litigation then centralized the case with a group of other similar lawsuits and transferred all of them to the U.S. District Court for the North District of Indiana for coordinated pretrial proceedings. There, Plaintiffs received certification for the following class:

> Any person who: 1) entered or will enter into FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since September 13, 2000, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal located in Kentucky or provide(d) pick-up and delivery services within Kentucky.

*In re FedEx Ground Package Sys., Inc., Emp't Practices Litig.*, 273 F.R.D. 424, 445, 448 (N.D. Ind. 2008). Since the pertinent provisions of the OA are nearly identical across different driver divisions, this class definition encompasses both Home Delivery drivers and Ground Pick-up and Delivery ("Ground P&D") drivers.

The MDL Court made a number of important rulings.  It held that Plaintiffs were independent contractors as defined under Kentucky common law, but were employees as defined under the state's Wages and Hours Act, KRS Chapter 337.  *In re FedEx Ground Package Sys., Inc., Emp't Practices Litig.*, 758 F. Supp. 2d 638, 684-85 (N.D. Ind. 2010).  As a consequence, Defendant received summary judgment to the extent that Plaintiffs' claims depended on employee status under the Kentucky common law.  *Id.* at 682-83.  However, the Plaintiffs' claims under KRS 337.060 and 337.070, the sections of the Wages and Hours Act dealing the propriety of wage deductions and their documentation, demanded further proceedings.  *Id.*  For this reason, the MDL Court remanded many of the cases to their original venues.

This Court must now determine whether Defendant's wage deductions violated KRS 337.060.  Plaintiffs moved for summary judgment concerning five deductions:  (1) insurance premiums, (2) the Business Support Package, (3) the Service Guarantee Program, (4) the Performance Escrow Account, and (5) Cargo Claims.  Defendant moved for partial summary judgment on the above-mentioned claims, excluding Cargo Claims, and also requested summary judgment on deductions for fuel card purchases, and licenses, taxes, and fees.  Plaintiffs chose to voluntarily dismiss their KRS 337.070 claims for improper documentation of deductions.

II.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When considering a motion for summary judgment, "the inferences to be drawn from the

3

underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). In cases where the material facts are undisputed, one of the parties is entitled to judge as a matter of law. *Tanks v. Greater Cleveland Reg'l Transit Auth.*, 930 F.2d 475, 477 (6th Cir. 1991).

### III.

This case requires the Court to interpret portions KRS 337.060 that have received little or no previous judicial attention and apply that statute to each of the contested deductions. The first sentence of KRS 337.060(1) establishes the general rule that "[n]o employer shall withhold from any employee any part of the wage agreed upon." The remainder of the subsection sets forth exceptions to that general rule, but the existence of a "wage agreed upon" is prerequisite to the application of the statute. *Spears v. Amazon.Com.KYDC LLC*, Civil No. 10-325-GFVT, 2011 WL 4499360, at *6 (E.D. Ky. Sept. 26, 2011).

Wages are defined as "any compensation due to an employee by reason of his or her employment . . . and any other advantages agreed upon by the employer and the employee or provided to employees as an established policy." KRS 337.010(1)(c). Here, the "wage" is established in OA § 4, which states that Plaintiffs will receive payment for their services through a weekly settlement payment. The exact amount of that payment is derived from a formula explained in OA Addendum 3. Even though the settlement payment may vary depending on the amount and type of work done, it is still a wage. It is undisputed that both parties agreed to this method of payment of "compensation due to an employee by reason of his or her employment." *See* KRS 337.010(1)(c). In light of the sweeping definition of wages in KRS 337.010(1)(c), the Court concludes that the settlement does constitute the "wage agreed upon."

Defendant does not dispute the fact that Plaintiffs provided the services necessary to receive pay under the settlement formula. *See Kimmel v. Progress Paint Mfg. Co.*, No. 2002-CA-000273-MR, 2003 WL 1226837, at *3 (Ky. Ct. App. Jan. 10, 2003) (reasoning that if the services required under the wage agreement are in *bona fide* dispute, KRS 337.060 cannot be applied). It is also undisputed that Defendant removed the contested deductions from the weekly settlement payments. Having found a "wage agreed upon," the initial protections of KRS 337.060 apply to any deductions from it. Next, the Court will examine those protections.

IV.

The Wages and Hours Act does "not make it unlawful for an employer to withhold or divert any portion of an employee's wage . . . when a deduction is expressly authorized in writing by the employee to cover insurance premiums, hospital or medical dues, or other deductions not amounting to a rebate or deduction from the standard wage arrived at by collective bargaining or pursuant to wage agreement or statute . . . ." KRS 337.606(1). Since an agreed upon wage existed and deductions to that wage occurred, the Court must now examine the exceptions to the general rule that no employer shall withhold any part of the agreed upon wage.

A.

As a preliminary matter the Court will address a few of Plaintiffs' broadly applicable arguments. Plaintiffs argue that the drivers lacked capacity to authorize any wage deductions

5

because they did not understand their rights under the Wages and Hours Act. This reasoning would have more relevance in the context of a fraud claim, but it has none here.[1]

To support their lack-of-capacity argument, Plaintiffs repeatedly direct the Court's attention to the increased scrutiny required for an employee's rejection of workers' compensation rights. *Karst Robbins Mach. Shop v. Caudill*, 779 S.W.2d 207, 208-09 (Ky. 1989). However, that standard relies on express language in KRS 342.395 and does not apply outside of the realm of workers' compensation. Plaintiffs made no claims under Kentucky workers' compensation law, and no court has held that the drivers are employees as defined under KRS Chapter 342. Therefore, the Court shall only review the contested deductions under the protections of the Wages and Hours Act.

The Court also disagrees with Plaintiffs analogies to 803 KAR 1:080, a regulation concerning the appropriate calculation of minimum wage and overtime pay. If applied under Plaintiffs' interpretation, this regulation would prevent Defendant from making wage deductions for items that primarily benefitted FedEx Ground. However, this interpretation does not accurately characterize the purpose or applicability of the regulation. The purpose of 803 KAR 1:080 is to ensure that employees receive a minimum amount of compensation and overtime pay without being subjected to deductions that primarily serve the employer. Once that minimum amount is reached, this regulation no longer applies, and the allowable deductions can be of a broader character.

B.

---

[1] Plaintiffs put forward a fraud claim at the outset of this litigation, but the MDL Court dismissed the claim when it held the drivers to be independent contractors under Kentucky common law. The resurrection of that claim through this lack-of-capacity argument cannot stand. Even though, Plaintiffs were unaware of their rights under the Wages and Hours Act, this Court will now make certain that Defendant has complied with it.

Plaintiffs argue that FedEx Ground improperly deducted insurance premiums covering work accident insurance and non-trucking liability insurance for the drivers and their employees. However, KRS 337.060 permits wage deductions that are "expressly authorized in writing by the employee to cover insurance premiums." OA §§ 3.1 and 3.6 notified the drivers that they were required to carry work accident and non-trucking liability insurance. Plaintiffs signed a Protective Insurance Enrollment Form which expressly authorized the deduction of the insurance costs. Both this form and the OA explicitly stated that if a driver takes advantage of the common provider through FedEx Ground the premiums will be deducted from the settlement.

Nevertheless, Plaintiffs contend that the authorization cannot be valid under KRS 464.060 because the explanatory language appeared after the signature on the reverse side of the form. The doctrine of incorporation by reference, however, does not require that all of the terms appear above the signature. *Childers & Venters, Inc. v. Sowards*, 460 S.W.2d 343, 344 (Ky. 1970). When a contractual signature is place after clear language that expresses the incorporation of other terms and conditions by reference, it is a logical inference that the signer intended to be bound by all of the incorporated terms. *Bartelt Aviation v. Dry Lake Coal Co., Inc.*, 682 S.W.2d 796, 797 (Ky. Ct. App. 1985).

The Protective Insurance Enrollment Form easily meets these requirements. It contained the following text and formatting directly above the signature line:

**IMPORTANT! READ BOTH SIDES OF THIS FORM BEFORE SIGNING BELOW.**

> I have carefully read the material on both sides of this form and have had a reasonable opportunity to inquire as to the meaning and intent of all parts. I hereby certify that I understand its content and completed all sections truthfully. I agree that any failure on my part to do so may constitute fraud, under which all coverages and insurance, as to me personally, may become void. I reserve the

>right to rescind any authorizations granted upon written notice to the Group Sponsor and/or Names Insured.

This presentation surpasses this standard by its use of conspicuous, bold type to alert the driver to the terms on the reverse of the page. OA Addendum 2 § 3.8 also explains that if a driver chooses to have FedEx Ground facilitate his insurance coverage, "Contractor authorizes FedEx Ground to deduct, from Contractor's settlement, amounts reflecting all of FedEx Ground's expenses and cost in obtaining and administering such coverage."

Plaintiffs argued that the authorization is improper because FedEx Ground failed to include the second page of the Protective Insurance Enrollment Form at the time the forms were executed. It is true that the Forms submitted in discovery did not show the reverse side of the document. However, Plaintiff has not supported their argument by affidavits or other evidence. To the contrary, Defendant provided a complete copy of the two-sided form and a declaration that the two-sided form was in standard use. Thus, Plaintiffs have failed to demonstrate a disputed contention. By these authorization procedures before subtracting the premiums from Plaintiffs' settlements, Defendant's deductions of work accident and non-trucking liability insurance premiums did not violate KRS 337.060.

C.

The parties' requests for summary judgment as to deductions made on account of the Business Support Package, fuel card purchases, licenses, taxes, and fees, the Service Guarantee Program, and the Performance Escrow Accounts must be analyzed within the catchall exception of KRS 337.060(1). The catchall exception provides that it shall not be unlawful for an employer to make "other deductions not amounting to a rebate or deduction from the standard

wage arrived at by collective bargaining or pursuant to wage agreement or statute." KRS 337.060(1).

Defendant asserts that since the now-repealed 803 KAR 1:088 separated this section into its own category, rather than including it with "insurance premiums" and "hospital and medical dues" in a continuous list of deductions requiring written authorization, the Court must hold that no authorization of any kind is necessary for "other deductions." The Court respectfully disagrees. Kentucky courts have reached the sensible conclusion that the phrase "arrived at by collective bargaining or pursuant to wage agreement or statute" modifies the term "other deductions" and not the term "the standard wage." *See Poynter v. Louisville Ry. Co.*, 218 S.W.2d 658, 659 (Ky. 1949) (interpreting an earlier version of KRS 337.060 to "ha[ve] no application to deductions arrived at by collective bargaining or pursuant to wage agreements"). While the catchall exception is a separate category within KRS 337.060(1), deductions under this exception still must be authorized by collective bargaining, wage agreement, or statute. The other logical interpretation, reading the exceptions as a continuous list, would still demand that Defendant obtain written authorization for the contested deductions.

In addition, "[o]ther deductions" under the catchall exception must also not constitute a "rebate or deduction from the standard wage . . . ." KRS 337.060(1). No judicial interpretation or regulation has defined wage rebates under this statute. A rebate is often considered the partial return of any payment, serving as a discount or reduction in the total amount due. The Court would consider any deduction to be a rebate if the employer provided no or unreasonably low value to the employee in exchange for the deduction. The Court will consider each deduction in the following subparagraphs.

9

1.

First, Defendant offered the drivers the opportunity to purchase a Business Support Package, which included FedEx Ground uniforms, vehicle logos, package scanners, propriety scanner software, vehicle inspections, drug tests, and access to associated vendors. OA § 7 explained that should the Plaintiffs choose to purchase the Business Support Package from FedEx Ground, the cost would be deducted from the weekly settlement. To indicate their desire to receive this package, Plaintiffs initialed the corresponding field in OA Addendum 7. By initialing Addendum 7, the drivers issued a written authorization to deduct for the cost of the Business Support Package from their wages. Because materials and services supplied by FedEx Ground allowed Plaintiffs to build a more competitive business and coordinate more effectively with the larger company, the Court would not consider the package to constitute a wage rebate.

2.

OA Addendum 9 informed Plaintiffs that they could elect to have FedEx Ground report and pay their fuel tax liability. Deductions for fuel card purchases furnished value by centralizing the record-keeping process for a tax liability Plaintiffs accepted in OA § 1.3. If the Plaintiffs elected this option, they would need to file mileage and fuel purchase data with Defendant. To ease any difficulty this reporting duty might cause, Defendant issued a fuel card upon request that allowed a driver to purchase fuel and report usage at FedEx Ground's fueling facilities. Drivers used this system of fuel tax reporting by initialing the appropriate box at the end of Addendum 9. This constitutes a valid written authorization for the subsequent wage deductions and does not impose a wage rebate.

3.

Defendant established a procedure for deducting the charges for licenses, taxes, and fees required to operate Plaintiffs' businesses. This procedure provided a convenient process by which Plaintiffs could make their businesses more efficient and competitive while build in a stronger relationship with FedEx Ground, similar to the benefits of the Business Support Package and the fuel card purchases. Prior to making any wage deductions in relation to these expenses, FedEx Ground sought out and received the drivers' written authorization. OA § 1.3 made clear that the Plaintiffs held final responsibility for all of these charges and proclaimed that acceptance of the agreement would allow such expenses paid by Defendant "to be charged back against and deducted from any compensation owed Contractor by FedEx Ground." The Court concludes that these deductions did not constitute a rebate.

4.

The Service Guarantee Program and the Performance Escrow Accounts are not true wage deductions, and thus analysis under KRS 337.060 is unwarranted. The Service Guarantee Program is an interest-bearing account created to accumulate funds from which unexpected maintenance expenses could be paid. Through OA Addendum 3 and an account enrollment form, Plaintiffs authorized contributions to individual accounts at their sole discretion. Plaintiffs retained the right to withdraw funds "at any time and for any purpose" under Home Delivery OA § 5 and Ground P&D OA § 8. Since the driver held unlimited access to these wages, no deduction occurred, and KRS 337.060 is not applicable.

The Performance Escrow Account is also not a true deduction, instead it is a mechanism through which FedEx Ground may collect on other accepted liabilities. In OA § 1.9, Plaintiffs agreed to deposit, "at such time and in such manner as FedEx Ground may specify," a sum of

11

either $500 for Home Delivery drivers or $1000 for Ground P&D drivers in an interest-bearing escrow account. At the termination of the OA, the balance of the account would be applied to any debt Plaintiffs owned Defendant. If Plaintiffs incurred no debt, all of the funds would be remitted. The Performance Escrow Account is only a mechanism for collecting underlying debts, not a deduction in itself. Therefore, analysis under KRS 337.060 is improper.

### D.

The final contested deduction, Cargo Claims, must be analyzed under both the catchall exception of KRS 337.060(1) and KRS 337.060(2)(e), which deals with deductions for losses and damage suffered by the employer. Once finding written authorization and determining whether the deduction constituted a rebate, the Court must ensure that the employer did not deduct "[l]osses due to defective or faulty workmanship, lost or stolen property, damage to property, default of customer credit, or nonpayment for goods or services received by the customer" from the wages of an employee "if such losses are not attributable to [the] employee's willful or intentional disregard of [the] employer's interest." KRS 337.060(2)(e).

Plaintiffs received notification in OA § 3.5(c) that they would be liable for the first $500 for Home Delivery drivers or the first $1000 for Ground P&D drivers of each claim for lost or damaged packages in their possession or the possession of their agents. However, Defendant did not collect written authorization from Plaintiffs to subtract these Cargo Claims from their weekly settlement payments. To the extent that Defendant deducted Cargo Claims directly from Plaintiffs' settlements, those deductions violated KRS 337.060(1).

Defendant also deducted Cargo Claims from the wages deposited in the Plaintiffs' Performance Escrow Accounts, but these deductions were made pursuant to a valid written

authorization. By assenting to the OA, Plaintiffs agreed to participate in the Performance Escrow Accounts and also recognized Cargo Claims as a liability that could be deducted from the account in accordance with the procedures in OA § 1.9. Since these deductions paid down an accepted liability, the finding of a rebate would be without merit.

Although some Cargo Claim deductions undoubtedly satisfied KRS 337.060(1), genuine disputes of fact exist as to whether Defendant attributed those deductions for lost or damaged cargo to Plaintiffs' "willful or intentional disregard" of FedEx Ground's interests. Defendant claims that such attribution occurred through the Driver Release Program, standards outlining the acceptable procedures for leaving a package at its final destination. However, it is not clear that the Driver Release Program applied to all drivers and all deliveries. Also, the standards guiding Defendant's decisions to deduct Cargo Claims may not attribute the high level of fault required by the statute. In some cases the proper level of attribution was likely met, but in others the Defendant likely failed to attribute "willful or intentional disregard." The Cargo Claims deducted from the Performance Escrow Accounts are individual and fact-specific. Therefore, class-wide summary adjudication is impermissible. However, any Cargo Claims removed directly from the weekly settlements violated KRS 337.060(1) requirement of written authorization.

For the reasons stated in its Memorandum Opinion and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that DEFENDANT'S partial motion for summary judgment is SUSTAINED as to the deductions for work accident and non-trucking liability insurance premiums, the Business Support Package, fuel card purchases, and licenses, taxes, and fees.

PLAINTIFFS' claims as to the aforementioned deductions, the Service Guarantee Program, and the Performance Escrow Accounts are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that PLAINTIFFS' motion for summary judgment is SUSTAINED to the extent that Cargo Claims were deducted from the weekly settlement or deducted without attribution of fault pursuant to KRS 337.060(2)(e).

The Court will set a conference to set a schedule for future discovery and motions.

cc: Counsel of Record